## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **JA SOLAR VIETNAM COMPANY LIMITED,** <br> **JA SOLAR PV VIETNAM COMPANY LIMITED,** <br> **JA SOLAR NE VIETNAM COMPANY LIMITED** <br> **AND JA SOLAR USA INC,** <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | Ct. No. 25-00157 |

## COMPLAINT

Plaintiffs JA Solar Vietnam Company Limited ("JAVN"), JA Solar PV Vietnam Company Limited ("JAPV"), JA Solar NE Vietnam Company Limited ("JANE") and JA Solar USA Inc ("JA USA") (collectively "JA Solar"), by and through its counsel, alleges as follows:

### I.     PROCEEDING UNDER REVIEW

1.     This action seeks judicial review of certain aspects of the final determination of the countervailing duty ("CVD") investigation conducted by the U.S. Department of Commerce ("Commerce") and the resulting order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules ("solar cells and modules") from the Socialist Republic of Vietnam. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Final Affirmative Countervailing Duty Determination and Final Affirmative Critical Circumstances Determination, in Part, 90 Fed. Reg. 17,399 (Dep't of Commerce Apr. 25, 2025) ("Final Determination"); Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Malaysia and Thailand: Amended Final Countervailing Duty Determinations; Crystalline Silicon Photovoltaic Cells, Whether or Not

Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Countervailing Duty Orders, 90 Fed. Reg. 26,791 (Dep't of Commerce June 24, 2025) ("Order").  The investigation in question covers entries of solar cells and modules from the Socialist Republic of Vietnam ("Vietnam") during the period of investigation ("POI") from January 1, 2023 through December 31, 2023.

## II.     JURISDICTION AND STANDARD OF REVIEW

2. JA Solar brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i)(II) and (a)(2)(B)(i).  19 U.S.C. § 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i).

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i)(II) and (a)(2)(B)(i) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i).

4. The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.     STANDING

5. JAVN and JAPV are foreign manufacturers and exporters of subject merchandise manufactured in Vietnam.  JANE is a cross-owned foreign producer and supplier of inputs to JAVN.  JA Solar USA Inc. is a U.S. importer of subject merchandise manufactured in Vietnam. JA Solar was a party to the proceeding that led to the contested determination through the submission of factual information as a mandatory respondent and arguments in JA Solar's case brief and rebuttal case brief.  JA Solar is, therefore, an "interested party" within the meaning of sections 771(9)(A) and 516(A)(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A), 1516a(f)(3).

6. Accordingly, JA Solar has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## IV.  TIMELINESS OF THIS ACTION

7. On April 25, 2025, Commerce published the Final Determination in the Federal Register. See Final Determination, 90 Fed. Reg. 17,399. Commerce published the resulting Order in the Federal Register on June 24, 2025. See Order, 90 Fed. Reg. 26,791.

8. JA Solar filed a summons to initiate this case on July 24, 2025, within 30 days of the publication of the Order in the Federal Register. See Summons (July 24, 2025), ECF No. 1. This complaint is being filed within 30 days after the date on which the summons was filed.

9. JA Solar's summons and complaint are thus timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II), (a)(2)(B)(i) and USCIT R. 3(a)(2), 6(a).

## V.  STATEMENT OF FACTS

10. On April 24, 2024, Commerce received a CVD petition concerning imports of solar cells and modules from Vietnam, filed on behalf of American Alliance for Solar Manufacturing Trade Committee ("Petitioner"). In the petition, Petitioner alleged that not only does the Government of Vietnam ("GOV") provide countervailable subsidies to Vietnamese producers and exporters of solar cells and modules but that the Government of the People's Republic of China ("GOC") provides cross-border countervailable subsidies to Vietnamese producers and exporters of solar cells and modules.

11. On May 14, 2024, Commerce initiated a CVD investigation, based on Petitioner's allegation, to determine whether the GOV, and the GOC, provided countervailable subsidies to Vietnamese producers and exporters of solar cells and modules. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia,

Thailand, and the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigations, 89 Fed. Reg. 43,816 (Dep't of Commerce May 20, 2024).  The International Trade Commission ("Commission") also conducted its investigation.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 89 Fed. Reg. 34,268 (Int'l Trade Comm'n April 30, 2024).

12.     On June 14, 2024, the Commission published notice of its affirmative preliminary injury determination.  Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and Vietnam; Determinations, 89 Fed. Reg. 50,633 (Int'l Trade Comm'n June 14, 2024).

13.     On June 18, 2024, Commerce selected two mandatory respondents for the investigation: (1) Boviet Solar Technology ("Boviet") and (2) JAVN.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the Socialist Republic of Vietnam: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Duty Determination, 89 Fed. Reg. 80,867 (Dep't of Commerce Oct. 4, 2024) ("Prelim."), and accompanying Dec. Mem. ("Prelim. Dec. Mem.").

14.     Pursuant to a request by the Petitioner, Commerce postponed the preliminary determination to September 23, 2024.  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Postponement of Preliminary Determinations in the Countervailing Duty Investigations, 89 Fed. Reg. 55,231 (Dep't of Commerce July 3, 2024).  On July 22, 2024, Commerce tolled

4

certain deadlines by seven days thereby further postponing the preliminary determination to September 30, 2024.  See Prelim., 89 Fed. Reg. at 80,867.

15. In August 2024, Petitioner submitted new subsidy allegations ("NSAs") on the cross-border provision of Chinese silicon wafers, silver paste and solar glass for less than adequate remuneration ("LTAR") as well as the Export Buyer's Credit Program.  See Prelim. Dec. Mem. at 4.  Petitioner later submitted NSAs on the cross-border provision of Chinese aluminum solar frames for LTAR and Chinese photovoltaic ("PV") junction boxes for LTAR.  See id.

16. On October 4, 2024, Commerce published its Preliminary Determination in the Federal Register.  Prelim., 89 Fed. Reg. 80,866.  Commerce preliminarily found that both mandatory respondents received countervailable benefits during the POR.  Commerce calculated a preliminary CVD rate of 0.81% for Boviet and 2.85% for JAVN, JAPV and JANE.  See id. at 80,868.

17. Pertaining to the particular programs challenged in this appeal, Commerce preliminary found that that record evidence did not demonstrate that the GOV employed a system of "rigorous customs enforcement" and determined the Import Duty Exemptions on Imported Raw Materials for Export Processing Enterprises ("EPEs") and Export Processing Zones program was, therefore, a countervailable subsidy.  See Prelim. Dec. Mem. at 40-43.  Further, relevant to the alleged transnational policy lending from Chinese banks for Belt and Road Initiative ("BRI") Capacity Cooperation Projects, Commerce preliminary found that JAVN's outstanding loans from commercial banks were at rates higher than the applicable benchmark rates and determined that the loan outstanding to JAVN provided no measurable benefits.  See id. at 49-50.  With regards to the NSAs on cross-border provision of Chinese silicon wafers, silver paste and solar glass for

LTAR, Commerce deferred determining whether the mandatory respondents benefitted from these programs. See id. at 4-5.

19. Following the Preliminary Determination, Commerce issued a post-preliminary decision memorandum on March 13, 2025 detailing its findings on the alleged transnational subsidy programs on cross-border provision of Chinese silicon wafers, Chinese silver paste and Chinese solar glass for LTAR, with corresponding benchmark determinations. See Final Determination, 90 Fed. Reg. 17,399, and accompanying Issues and Dec. Mem. (Final Dec. Mem.) at 3; Mem from Scot Fullerton to Christopher Abbott re: Countervailing Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from the Socialist Republic of Vietnam: Post-Preliminary Decision Memorandum (Dep't of Commerce Mar. 13, 2025) ("Post-Prelim Dec. Mem."). For Commerce to find an alleged subsidy program to be countervailable, the alleged subsidy must be provided by an "authority", i.e., a "government of a country or any public entity within the territory of the country," that provides a "financial contribution" that confers a "benefit" with "specificity". See 19 U.S.C. § 1677(5)(B), (E), (5A). The GOC reported that no Chinese producers of silicon wafers, solar glass or silver paste that supplied these inputs to the mandatory respondents were majority government-owned enterprises during the POI. See Final Dec. Mem. at 33-44; Post-Prelim Dec. Mem. at 4-8. Commerce nevertheless preliminarily found that the GOC failed to provide requested information for private, individual owned companies and relied on facts otherwise available, namely the purported information provided in the Petitioner's allegations, to determine that these producers were "authorities" within the meaning of section 771(5)(B) of the Act. See Final Dec. Mem. at 36-44; Post-Prelim Dec. Mem. at 4-8.

19.     Further, Commerce relied on purported information provided in the Petitioner's allegations, such as the claim that at least 71 percent of purchases of silicon wafer and solar glass in the Vietnam market and at least 70 percent of purchases of silver paste in the Vietnam market were produced and supplied by GOC authorities, to find that the Vietnamese market was distorted. See Post-Prelim Dec. Mem. at 7-11. Accordingly, Commerce determined to utilize tier-two benchmark prices to measure the adequacy of remuneration of these inputs. See id.

20.     Before the post-preliminary determination, Petitioner and mandatory respondents submitted potential benchmarks to value silicon wafers, silver paste and solar glass. With regards to silicon wafers, Petitioner submitted the United Nations Comtrade ("Comtrade") data for world-wide exports for 2023 and Global Trade Atlas ("GTIS") data for Indonesia and Thailand world-wide imports for 2023 under Harmonized System ("HS") subheading 3818.00. See id. at 11. These data covered a broad category of "chemical elements doped for use in electronics, in the forms, of discs, wafers, or similar forms; chemical compounds doped for use in electronics." See id. Boviet submitted benchmark data from Bloomberg, specific to silicon wafers, during the POI. See id. Although Commerce found that the Bloomberg data were indeed specific to the input silicon wafers, Commerce preliminarily determined that the Comtrade data for HS subheading 3818.00 were the most appropriate tier-two benchmark because these data cover exports to all countries and it was unclear how the Bloomberg data were calculated and whether they contained exports from China and Vietnam. See id. at 12. Commerce additionally applied the value-added tax ("VAT") rate for silicon wafers in its benchmark calculation. See id. at 13.

21.     With regards to solar glass, Petitioner submitted Comtrade world export data for HS subheading 7007.19 for the POI, covering "safety glass, consisting of toughened (tempered) or laminated glass: Toughened (tempered) safety glass; Other." See id. at 16. JA Solar submitted

7

PV Insights data that contained monthly prices specific to solar glass during the POI.  Commerce preliminarily found that the PV Insights data were more specific to the solar glass input than the Comtrade data because the Comtrade data included other kinds of glass that were not used in the production of solar cells and modules.  See id.  Commerce also applied the VAT rate and MFN import duty rate to the benchmark in its calculation.  See id.

22. Subsequently, Commerce conducted an in-person verification of the GOV and JAVN in Hanoi and Bac Giang, Vietnam.  See Final Dec. Mem. at 3.  During the verification, Commerce examined the Import Duty Exemptions of Imported Raw Materials for EPEs and Export Processing Zones program and found that certain imported products would have been subject to AD duties, where Commerce confirmed that EPEs were exempt from import duties and AD duties.  See id. at 8.  Commerce further observed, through its verification of the GOV, that EPEs are subject to three inspections from the GOV and that EPEs were required to submit Customs settlement reports on an annual basis.  See id. at 78-80.  During verification, Commerce also found that JAVN and JAPV had imports of machinery during the average useful life ("AUL") period prior to the POI, granted duty-free treatment due to JA Solar's EPE status.  See id. at 86.  JAVN's officials fully cooperated with Commerce during the verification to confirm the imported machinery.  See id.

23. Following the post-preliminary decision memorandum, JA Solar submitted case and rebuttal briefs for Commerce's consideration prior to the Final Determination.  See id. at 3-4 (noting that JAVN submitted case and rebuttal briefs). In these briefs, JA Solar demonstrated that: (1) Commerce improperly determined to countervail transnational subsidy programs because Commerce is statutorily prohibited from countervailing subsidies from third countries; (2) Commerce wrongly countervailed JA Solar's purchases of silicon wafers because JA Solar

8

purchased its silicon wafers purchased from non-GOC authorities and used these wafers in the production of non-subject merchandise; (3) if Commerce continues to unlawfully countervail JA Solar's purchase of silicon wafers, it must use the Bloomberg data submitted by Boviet instead of the Comtrade data because the former is more specific to the silicon wafers used to produce solar cells and modules; (4) Commerce improperly added VAT and import duties to its benchmark price for silicon wafers, silver paste and solar glass when JA Solar did not pay VAT and import duties as EPEs; (5) Commerce cannot countervail the alleged import duty exemptions on imported raw materials for EPEs and export processing zones program because Vietnam maintains a rigorous customs system such that there is no foregone revenue; (6) Commerce should not apply adverse facts available ("AFA") to JA Solar pertaining to the alleged imported raw materials for EPEs and export processing zones program or the import duty exemptions on imported equipment because Commerce did not require reporting of JA Solar's purchases of machinery during the AUL period and instead limited the reporting to the POI, and JA Solar properly disclosed that it had imports of machinery; and 7) Commerce improperly determined that JA Solar's loans are countervailable when these loans are not associated with any BRI Capacity Cooperation Projects. See id. at 19-93. On April 9, 2025, Commerce held a public hearing where JA Solar presented the arguments presented in its case and rebuttal case briefs. See id. at 4.

24. On April 25, 2025, Commerce published the Final Determination in the Federal Register. See Final Determination, 90 Fed. Reg. 17,399. Commerce calculated a final subsidy rate of 68.15 percent *ad valorem* for JAVN, JAPV and JANE. With regards to NSAs on the Export Buyer's Credit program, Commerce determined to defer the decision to initiate an investigation until the first administrative review in the event the instant investigation resulted in a CVD order, citing novelty, complexity and lack of sufficient time to review and examine the allegations. See

Final Dec. Mem. at 4. For the alleged cross-border provision of aluminum solar frames and PV junction boxes for LTAR, Commerce determined to defer its investigation of these programs until the first administrative review for similar reasons. See id.

25. In the Final Determination, despite substantial evidence on the record, Commerce disagreed with JA Solar's arguments above, and found that Commerce may investigate and countervail transnational subsidies because neither the statute nor the holdings of Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024) constrain Commerce's ability to interpret the statute to permit countervailing transnational subsidies. See id. at 22-27. Commerce subsequently determined that cross-border provision of Chinese origin polysilicon, silicon wafers, silver paste, and solar glass for LTAR programs are *de facto* specific and countervailable. See id.

26. Commerce also determined the record did not show that JA Solar's purchases of silicon wafers were tied to non-subject merchandise and continued to measure the benefits from all of JA Solar's purchases of silicon wafers, without addressing JA Solar's specific arguments and record evidence that its purchases of silicon wafers were from non-GOC authorities. See id. at 58-60. Commerce merely referred to how the agency's "focus is on 'the purpose of subsidy based on information available at the time of bestowal,'" and refused to consider how these purchases were from non-GOC authorities. Id. at 59-61.

27. Before the Final Determination, Commerce had put its own Comtrade data rather than the Petitioner's proposed Comtrade data on the record. See id. at 56. In the Final Determination, Commerce agreed with JA Solar that Commerce has previously utilized the proposed Bloomberg data to value silicon wafers. See id. In fact, Commerce also agreed that Comtrade data cover products dissimilar from silicon wafers used in solar cells and modules. See id. at 51-56. Nevertheless, Commerce determined that Comtrade data are the best information on

10

the record to value silicon wafers because these data are disaggregated and allow for the exclusion of "distorted markets." Id.

28. Commerce also determined that JA Solar's loans are countervailable. Despite confirming that JA Solar's reporting of loans was accurate and not conditional on JA Solar's investment in any BRI industrial zones nor its physical location in a GOC-controlled area or special economic zones, Commerce nevertheless found that cannot determine if any loans received by JAVN are related to the BRI projects without a response from the GOC. See id. at 48-50.

29. In the Final Determination, Commerce revised its Preliminary Determination and used the Comtrade data instead of the PV Insights data preliminarily used as a benchmark to value solar glass. See id. at 66-71. Despite acknowledging that "PV Insights data has been preferred in previous *Solar Cells China* cases{,}" and that PV Insight provides a more specific pricing for non-China solar glass prices, Commerce determined that the Comtrade data was preferrable in this case. Id. at 68-71. Commerce found that the Comtrade data allowed it to remove solar glass prices from the subsidy provider, China, and further allowed Commerce to disaggregate individual prices by country of origin. See id.

30. Further, ignoring respondents' arguments that (1) JA Solar did not actually pay or would pay any VAT or import duties as an EPE and (2) that Commerce itself has recognized that JA Solar did not pay any VAT and import duties as EPEs by countervailing the alleged Import Duty Exemptions on Imported Raw Materials for EPEs and Export Processing Zones, Commerce determined not to exclude VAT and import duties from benchmark calculations because the inclusion reflects the price a firm would pay if it imported the product. See id. at 71-73.

31. Commerce additionally determined to continue to countervail import duty exemptions on imported raw materials for EPEs and export processing zones despite substantial

11

evidence on the record that EPEs operate outside of the Vietnam customs territory and that GOV has a sophisticated system of tracking the amount of waste and resalable waste. See id. at 76-82.

32. Finally, Commerce determined to apply AFA to JAVN with respect to import duty exemptions on imported equipment during the AUL period and determined to apply AFA to JAVN with respect to import duty exemptions on imported raw materials for EPEs and export processing zones based on alleged lack of cooperation and failure to disclose and report purchases of equipment in the AUL and certain products otherwise subject to AD duties. See id. at 91-93. Commerce, however, did not consider or address that JA Solar's statement to Commerce prior to verification regarding the accuracy of its factual information as well as its reporting of purchases of equipment during the POI as requested by Commerce's own questionnaire. See id. 89-93.

33. Following a final affirmative injury determination by the Commission, Commerce published the Order in the Federal Register on June 24, 2025. See Order, 90 Fed. Reg. 26,791.

## VI.    STATEMENT OF THE CLAIMS

### COUNT I

34. JA Solar herein incorporates by reference paragraphs 1 through 33 supra.

35. Commerce's determination to countervail the transnational subsidy programs was not supported by substantial evidence and was otherwise not in accordance with law because the statute is unambiguous in limiting, by law, CVD investigations to investigations of subsidies bestowed by a single country in which the recipient firm is located and Commerce is statutorily prohibited from countervailing subsidies from multiple countries, let alone third countries.

### COUNT II

36. JA Solar herein incorporates by reference paragraphs 1 through 35 supra.

37. Commerce's determination to countervail JA Solar's purchases of silicon wafers was not supported by substantial evidence and was otherwise not in accordance with law because the record demonstrates that JA Solar used its purchases of silicon wafers from China to produce non-subject merchandise and JA Solar purchased its silicon wafers from non-GOC authorities.

## COUNT III

38. JA Solar herein incorporates by reference paragraphs 1 through 37 supra.

39. Commerce's determination to use Comtrade data instead of Bloomberg data for its benchmark to value silicon wafers was not supported by substantial evidence and was otherwise not in accordance with law because the Comtrade data are overly broad and Commerce has previously relied on the Bloomberg data to value silicon wafers.

## COUNT IV

40. JA Solar herein incorporates by reference paragraphs 1 through 39 supra.

41. Commerce's determination to use the Comtrade data instead of the PVInsights data for its benchmark to value solar glass was not supported by substantial evidence and was otherwise not in accordance with law because the Comtrade data are overly broad and not specific to solar glass and Commerce has previously relied on the PVInsights data to value solar glass.

## COUNT V

42. JA Solar herein incorporates by reference paragraphs 1 through 41 supra.

43. Commerce's determination to countervail JA Solar's loans was not supported by substantial evidence and was otherwise not in accordance with law because JA Solar's loans were not associated with any BRI as verified by Commerce.

## COUNT VI

44.     JA Solar herein incorporates by reference paragraphs 1 through 43 supra.

45.     Commerce's determination to add VAT and import duties to its benchmark prices for silicon wafers, silver paste and solar glass was not supported by substantial evidence and was otherwise not in accordance with law when the record demonstrated that JA Solar would not have paid the VAT and import duties as an EPE.

## COUNT VII

46.     JA Solar herein incorporates by reference paragraphs 1 through 45 supra.

47.     Commerce determination to apply AFA against JA Solar in respect to the Import Duty Exemptions on Imported Equipment was not supported by substantial evidence and was otherwise not in accordance with law when Commerce's questionnaire did not require reporting of imported machinery during the AUL period and JA Solar fully cooperated with Commerce's verification.

## COUNT VIII

48.     JA Solar herein incorporates by reference paragraphs 1 through 47 supra.

49.     Commerce application AFA against JA Solar in respect to Import Duty Exemptions on Imported Raw Materials for EPEs and Export Processing Zones was not supported by substantial evidence and otherwise not in accordance with law because at most Commerce should apply partial AFA with respect to JAVN's purchases of the certain product otherwise subject to AD duties.

## COUNT IX

50. JA Solar herein incorporates by reference paragraphs 1 through 49 supra.

51. Commerce's determination to exclude Vietnamese export prices from its benchmarks for silicon wafers, silver paste and solar glass was not supported by substantial evidence and was not in accordance with law when Commerce provided zero explanation for arbitrarily treating Vietnam differently than other countries that it did not remove apart from Commerce's unjustified conclusion that "GOC authorities account for at least 71 percent of silicon wafer production." See Final Dec. Mem. at 50-59.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, JA Solar respectfully requests that this Court:

(1) declare Commerce's actions as described in Counts I through IX were unsupported by substantial evidence and were otherwise not in accordance with law;

(2) remand to Commerce with instructions to recalculate the countervailing duty rate for JAVN, JAPV and JANE in this investigation in accordance with the Court's decision;

(3) order Commerce to publish amended final determination and order in the Federal Register in accordance with a final decision by this Court;

(4) order Commerce to issue amended cash deposit instructions to the U.S. Customs and Border Protection consistent with this Court's decision; and

(5) provide such other relief as this honorable Court deems proper.

Respectfully submitted,

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Bryan P. Cenko
Clemence D. Kim
Evan P. Drake*
**Mowry & Grimson, PLLC**
*Counsel to JA Solar Vietnam Company Limited, JA Solar PV Vietnam Company Limited, JA Solar NE Vietnam Company Limited and JA Solar USA Inc*

*\*Admitted to New York bar; Practice supervised by members of the D.C. bar and limited to federal international trade matters pursuant to D.C. Bar Rule 49(c)(2)*

Date: August 22, 2025